LRA 380

ELLA A. TUDOR

v.

CHICAGO AND SOUTH SIDE RAPID TRANSIT RAILROAD CO.

*Filed at Ottawa November 27, 1894.*

1. STREET RAILWAY—*city ordinance locating railway has force of law.* Where the city council of Chicago, in pursuance of the power conferred by the city charter "to provide for the location of any railroad," fixes, by ordinance, the location and limits of the right of way of an elevated railroad, its ordinance has the force of statute law, and is a limitation upon the power of the railway company.

2. EMINENT DOMAIN—*railroad company cannot condemn beyond limits fixed by ordinance.* An elevated railroad company which has accepted the provisions of a city ordinance which the city was authorized to pass, limiting the right of way to a designated width, and providing that it shall be immediately adjacent to and parallel with an alley between designated streets, cannot condemn land of a greater width than that specified, part of which lies outside of the limits prescribed by the ordinance.

APPEAL from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

HARBERT & DALEY, for appellant:

The city council had authority to locate the right of way of the petitioner by ordinance, and when such location had been made the company was bound thereby. Rev. Stat. sec. 19, chap. 14; 1 Starr & Curtis' Stat. par. 25, p. 465; *Railroad Co. v. Dunbar,* 100 Ill. 110.

The city having been authorized, passed an ordinance locating the right of way, and having passed such ordinance pursuant to the authority conferred, such ordinance has the force and effect of a law passed by the legislature. *Mason v. Shawneetown,* 77 Ill. 533; *Hayes v. Railroad Co.* 111 U. S. 228; Dillon on Mun. Corp. sec. 308; *Taylor v. Carondelet,* 22 Mo. 105.

The city and its inhabitants have power to prescribe, as conditions of giving their assent, such lawful and proper terms as they deemed expedient. *Railroad Co. v. Leavenworth,* 1 Dill. 398; *Railway Co. v. Baltimore,* 21 Md. 104.

154—9

The petition should set forth, by appropriate averments, all the facts necessary to authorize the tribunal to act. Lewis on Eminent Domain, secs. 602, 348, and cases cited; *Daggy* v. *Green*, 12 Ind. 304; *Smith* v. *Railroad Co.* 105 Ill. 517.

The owner of the land has the right to say, that unless corporations keep within the strict limits prescribed by law they ·shall not disturb him in the possession and enjoyment of his property. *Railroad Co.* v. *Railroad Co.* 75 Ala. 281.

Any omission to observe the requirement of the statute is fatal to the jurisdiction of the court in which proceedings to acquire title to land are instituted. *In re Niagara Falls Railway Co.* 46 Hun, 94; *Daggy* v. *Green*, 12 Ind. 305 ; *State* v. *Molly*, 18 Iowa, 525 ; *Eames* v. *Northumberland*, 44 N. H. 67; *Bank* v. *Schoenberger*, 111 Pa. St. 98.

Even if the court had jurisdiction, it was error to ignore the ordinance and permit the taking of the premises in question. *Railway Co.* v. *Wachter*, 123 Ill. 440 ; Mills on Eminent Domain, sec. 48 ; Lewis on Eminent Domain, sec. 117; *In re Town of Bridport*, 24 Vt. 176.

WILSON & MOORE, for appellee :

In this proceeding it is attempted only to exercise the powers conferred by the statutes of the State of Illinois, and it was not necessary, therefore, to make any allusion in the petition to the ordinance passed by the city of Chicago. *Railway Co.* v. *Railway Co.* 87 Ill. 317; *Railway Co.* v. *Railroad Co.* 112 id. 589 ; *County of Cook* v. *Railroad Co.* 119 id. 218; *Railroad Co.* v. *Dix*, 109 id. 237; *Railway Co.* v. *People ex rel.* 73 id. 541; *Davis* v. *Mayor*, 4 Kern. 506 ; *Railroad Co.* v. *Railroad Co.* 113 Ill. 166.

·A motion in arrest of judgment does not raise any question as to the correctness of the rulings of the court, or the sufficiency of the evidence upon which the verdict was based. Tidd's Practice, 918, 919 ; *Rouse* v. *County of Peoria*, 2 Gilm. 99 ; *Wells* v. *Curtis*, 36 Ill. 156.

Where a defendant goes to trial in a condemnation suit without objection as to the right of petitioner to condemn his land, he is held to have waived the necessity for making proof of such right.    *Ward* v. *Railroad Co.* 119 Ill. 287; *Brown* v. *Railway Co.* 125 id. 607.

CARTER, J.:    This controversy has its origin in certain proceedings prosecuted by the Chicago and South Side Rapid Transit Railroad Company for the purpose of acquiring a right of way for its elevated railroad.    The only question presented by the record is in respect to the jurisdiction and authority of the court to condemn, for the purposes of such right of way, the west six feet of a certain lot 13, owned by Ella A. Tudor, the appellant, and described in the petition of said company.    Such proceedings were had in the circuit court of Cook county as that $2670 was awarded to appellant as compensation for said six feet and the buildings thereon, and $760 as damages to the remainder of the lot, and $75 was awarded to the lessee as compensation for his leasehold, and it was ordered that upon payment of said respective sums being made by the railroad company to the county treasurer of Cook county, for the benefit of appellant and said lessee, the company might enter upon the said west six feet of said lot 13, with all the improvements thereon, and use the same for its right of way and for the uses and purposes set forth in its petition.

Section 20 of chapter 114 of the Revised Statutes invests every railroad company incorporated under the provisions of the general law with power to select the route of its proposed railway, purchase, hold and use such real estate as is necessary for its construction and use, and lay out its road, not exceeding one hundred feet in width, and construct the same.    Section 18 of the same chapter provides that if any such corporation shall be unable to agree with the owner for the purchase of any real estate required for right of way or for other purposes

of its incorporation, it may acquire title thereto in the manner provided for in the law of eminent domain. It is, however, provided in the fifth paragraph of section 20, above mentioned, that nothing in the act contained shall be construed to authorize the construction of any railroad upon or across any street in any city or incorporated town or village without the assent of the corporation of such city, town or village.

It is a condition precedent to the construction of a railroad upon or across a public street in a city, that the assent of the city corporation must first be obtained. But the right and the power which the railroad company has to condemn private property within the limits of the city are derived from the State and by virtue of its organization under the statute, and not from the city authorities and by force of municipal ordinances. And so the rule under our present legislation is, that it is not necessary as a condition precedent to the location by a railroad company of its road within a city, or to its construction of such portions of its line as are not within, upon or across a street, or to the exercise of the power to condemn private property for the purposes of its construction, that an ordinance should be passed by the city council either providing for the location of the road, or giving assent for its construction upon or across the streets of the city, or any of them. This doctrine has been announced in a number of adjudicated cases. In *Metropolitan City Railway Co.* v. *Chicago West Division Railway Co.* 87 Ill. 317, the condemnation proceeding was objected to on account of the alleged invalidity of the ordinance of the city council under which the appellant corporation claimed the right to construct its railway on certain streets. It was there said : "Obtaining consent of the common council of the city to laying the track of petitioner's railway in any given street is not a condition precedent to condemning such property right, interest or privilege as defendant may have previously acquired, by contract or otherwise,

in such streets. That consent may, with equal propriety, be obtained afterwards, and it is immaterial when it is secured. * * * No matter what conclusion may be reached as to the legality of the ordinance, it is not a question that, in any degree, affects petitioner's right to condemn the property of defendant, or any one else, for the purposes of its organization." In *Chicago and Western Indiana Railroad Co. et al.* v. *Dunbar et al.* 100 Ill. 110, the litigation was with the owners of certain city lots, and the claim was, that the ordinance consenting to the crossing of streets and alleys upon the route was illegal and void, and it was there said by the court: "The law in no way provides the order in which the railroad company shall proceed in acquiring its right of way. * * * The law has provided one mode of acquiring the right of way across private property, and another mode of acquiring the right of way across streets, but the law has in no way provided the order in which the railroad company shall proceed in acquiring its right of way." *Chicago and Northwestern Railway Co.* v. *Chicago and Evanston Railroad Co.* 112 Ill. 589, was a proceeding to condemn, for railroad purposes, a piece of land within the city limits of Chicago, and a claim was made that the appellee had no power to enter the city, but it was held that the right of the appellee to maintain the proceeding was purely statutory, and that the proceeding there involved was wholly under its charter and the Eminent Domain act. See, also, *County of Cook* v. *Great Western Railroad Co. et al.* 119 Ill. 218.

It is to be noted, however, that the twenty-fifth paragraph of section 1 of article 5 of the general Incorporation law for cities and villages gives to the city councils of cities organized under its provisions power "to provide for and change the location, grade and crossings of any railroad." Said provision is *in pari materia* with the provisions of sections 18 and 20, and other sections, of chapter 114 of the Revised Statutes, in regard to the location by a railroad company of its road and the condemnation of

private property for railroad purposes.    Said paragraph
of the City Incorporation act and said provisions of the
Railroad Incorporation act are therefore to be construed
together, so that every part of both may stand together
and harmonize, and each have a sensible and intelligent
effect.    *Young* v. *Stearns*, 91 Ill. 221.

In the *Dunbar case, supra,* this court had under con-
sideration the powers delegated to cities by said para-
graph 25 now in question.    It was there held that the
powers possessed by the city council of Chicago "to pro-
vide for the location, grade and crossings" of railroads
within the city, and "to change the location, grade and
crossings" of railroads, were not, in and of themselves,
limitations upon the power of a railroad company to
locate its road within the limits of the city, or upon its
power to prosecute legal proceedings for the condemna-
tion of such private property within the city limits as
was necessary for the purposes of the construction or use
of its railroad.    The court said:    "The city possesses *the
power* to act on this subject, but the mere existence of the
power can have no effect unless it is exercised by the city.
*  *  *  The power of the city is to *provide* for the loca-
tion of the railroad by the railroad company, for by law
no one other than the railroad company has the power
of location.    That power is conferred on the railroad
company alone, and not upon the city; but it must be
exercised by the railroad company *subject to such provision,
if any, as the city council may lawfully make.*    The railroad
company may, *subject to such power in cities and villages,*
exercise, by law, all the powers granted by the Railroad
act, and the only condition precedent found in the laws
as they now stand is, that the assent of the corporation
of the city must be obtained before it may lawfully con-
struct its road upon or across a public street in a city."
The court also said:    "There is no longer any prohibition
by statute against locating the route *in any part* of the
city.    The prohibition is now confined to the use of streets,

and all other parts of the city become open to the opera-
tions of the railroad company, *until some provision limiting
the same is made by the city council.*"  And the court further
there said: "The *power* to provide for the location of rail-
roads is conferred upon the city council, but the *duty* of
exercising that power, in *all cases*, is not imposed by law
upon the city council.  The law leaves to *the discretion of
the city council* the question as to the cases in which the
power shall be exercised, and the question as to *what pro-
vision* shall be made upon the subject in each case.   Over
this discretion the courts have no control."  In the opinion
filed in said *Dunbar case* upon the application for a rehear-
ing, the idea that city councils have power to control and
place restrictions upon the location of railroad tracks
within cities is reiterated and emphasized.

It appears from the record that by an ordinance
adopted by the city council of Chicago on March 26, 1888,
and approved March 29, 1888, authority was given the
appellee company to construct, maintain and operate an
elevated railroad along and upon the following route in
the city of Chicago, to-wit:   "Commencing at the north
line of Van Buren street at some point between Dearborn
street on the west and Wabash avenue on the east, running
thence southwardly over such lots, lands and property as
the company now owns or hereafter may acquire by lease,
purchase, condemnation or otherwise, between said Dear-
born street on the west and Wabash avenue on the east,
to a point to be selected by said company between the
north line of Thirty-seventh street and the south line
of Thirty-ninth street;  thence eastwardly or south-east-
wardly over such lots, lands and property as said company
now owns or hereafter may acquire by lease, purchase,
condemnation or otherwise, to a point to be selected by
said company, between Dearborn street on the west and
Forest avenue on the east, at which point to cross the
city limits, the city limits, as here used, meaning the city
limits on Egan avenue and Thirty-ninth street."   Said

authority was coupled with the following condition, to-wit: "*Provided*, that said company shall not use or acquire, by purchase, condemnation or otherwise, a right of way upon and along the route aforesaid exceeding in width thirty feet, except where a greater width is required for termini and curves, each terminus being limited in length to one block. Where stations are to be located along the right of way, the said company may acquire, by purchase, condemnation or otherwise, such additional property as may be necessary for stations. Such additional property shall not be occupied by tracks, switches or turn-outs: *Provided further*, that the right of way as defined in this ordinance, between Van Buren street on the north and Thirty-seventh street on the south, shall be immediately adjacent to and parallel with one of the alleys or alley lines between Wabash avenue and Dearborn street."

Since by the charter of the city of Chicago its city council has power "to provide for the location of any railroad," and also authority "to pass all ordinances proper or necessary to carry into effect the powers granted," it would seem that the provisions of the ordinance under consideration must be given the force and effect of a law. In *Mason et al.* v. *City of Shawneetown*, 77 Ill. 533, it was held that where an incorporated city has been invested by the legislature with power to pass an ordinance, and has adopted an ordinance in pursuance of the act creating the corporation, then such ordinance has the force and effect of a law enacted by the legislature, and is to be regarded as a law of and within the municipality. Here, the railroad company filed in the office of the city clerk its written acceptance of said ordinance, and of all its terms, provisions, limitations, conditions and reservations. We think it clear that said ordinance is a limitation upon the powers of the railroad company. To hold otherwise would be to render wholly inoperative the power delegated in the charter to the city council "to provide for the location of any railroad."

The contention of appellant is, that the appellee corporation had no authority to condemn, for the purposes of its right of way, the west six feet of her lot 13, and that the circuit court had no jurisdiction to entertain a proceeding for such condemnation. Lot 13 of appellant lies between Van Buren street on the north and Thirty-seventh street on the south, and fronts north on Twenty-eighth street. Immediately west of it is lot 14, which is twenty-five feet wide. The alley running north and south between Wabash avenue on the east and State street on the west extends south in the block between Twenty-eighth and Twenty-ninth streets from the rear of lot 13, but has never been extended north through said lot to Twenty-eighth street, and it is not entirely clear from this record whether or not, if the alley were so extended on the same line, its west line would coincide with the west line of lot 13. In fact, the only evidence on this question is found in the plat given in evidence by consent of both parties. 'As drawn, the plat would seem to indicate that these lines would coincide, but by the distances, given in figures on the plat, it appears that the west line of the alley, where it ends at the south line of lot 13, is 149.1 feet east of State street, while the west line of the lot, at its south line, is only 147 feet east of State street, and that if the alley were extended it would leave a strip off the west side of lot 13, 2.1 feet wide west of the alley. We are inclined to the opinion that the plat, taken as a whole, does show that the west line of lot 13 lies further west than the west line of the alley. We are also of the opinion that appellee had the right to have this strip off the west side of lot 13 lying west of the west line of the alley when extended, condemned, to be used, in connection with lot 14, for its right of way, but that it had no right to take the entire six feet of lot 13, as allowed by the trial court.

In compliance with the ordinance, appellee located its road west of and immediately adjacent to one of the .

lines (the west one) of this alley, and parallel with it. By the ordinance its right of way was limited to thirty feet in width. By force of the ordinance, and its action under it, appellee was confined at this part of its line, in its right of way, to the strip of land thirty feet wide lying west of, immediately adjacent to and parallel with the west line of this alley when extended north to Twenty-eighth street. Appellee obtained lot 14 by condemnation, and sought to have the west six feet of lot 13 condemned also, and obtained a judgment therefor in the trial court. By this judgment appellee was permitted not only to take more land than was authorized by the ordinance, but to take land lying outside of the limits prescribed by the ordinance and adopted by it in the location of its road. It had no lawful authority to do this. By the act for the incorporation of railroad companies, such companies are restricted to a right of way "not exceeding one hundred feet in width." The courts would have as much authority to ignore that provision as they have to ignore the positive restrictions contained in the ordinance in question, which, when accepted and acted on by appellee, became of the same binding force, so far as the questions here are concerned, as if contained in the act of incorporation.

Appellee justly insists that if the provision of the ordinance respecting the location of the road "is open to different constructions, one of which will defeat the intention of the framers of the ordinance and the other carry it into effect, the latter should be adopted, although the former should be in accordance with the plain and literal meaning of the words used;" and also, that it is a well established principle that "in the construction of a statute the courts are not confined to the literal meaning of the words in the statute, but the intention may be collected from the necessities and object of the act, and its words may be enlarged or restricted according to its intent." (*Cruse* v. *Aden*, 127 Ill. 231; *Castner* v. *Walrod*, 83 id.

171.) It is further said in argument for appellee, that
"it would be impossible to construct any railroad between
Van Buren street and Thirty-seventh street immediately
adjacent to and parallel with any single alley or alley
line.    There is no continuous alley between Dearborn
street on the west and Wabash avenue on the east, ex-
tending from Van Buren street to Thirty-seventh street,
nor is there any alley the line of which could be pro-
jected through blocks where there are no alleys, which
would, in connection with the alley lines in blocks con-
taining alleys, make a continuous straight line, or even
approximately so.   There are blocks and parts of blocks
with no alleys; blocks with two alleys running north
and south; adjoining blocks in which the alleys running
north and south are not at the same distance from State
street; so that it is simply impossible to comply with
the proviso if construed to require the right of way, at
all points, to be immediately adjacent to and parallel
with any single line which shall coincide for any part of
its length with the line of any alley lying within the ter-
ritory specified in the ordinance.    This difficulty was
within the knowledge of the council which passed the
ordinance, and it contains provisions for curves in the
right of way."

The principle of construction contended for by counsel
may be conceded, but we can see no room for its appli-
cation on the facts disclosed by the record in this case.
The insuperable obstacles to the carrying into effect the
provisions of the ordinance in the location of the road
according to their strict and literal meaning, mentioned
in the argument, are not shown by the evidence.   On the
contrary, so far as we can discover from the record it
would have been just as practicable for appellee in con-
structing its road, in relation to the property in contro-
versy, to have confined its right of way to the authorized
strip thirty feet wide lying next west of the west alley
line, whereon, as a matter of fact, as shown by the evi-

dence, appellee understood and intended its right of way should in the main be located. On the case presented by this record we see no reason for giving to the words employed in the ordinance any different meaning from that which they would ordinarily convey. In his work on Eminent Domain (sec. 255) Mr. Lewis says: "In determining whether statutes confer the right to exercise the power of eminent domain, the rules of strict construction are to be applied. But when the power has undoubtedly been conferred by a statute, then, in so far as it attempts to define the location or route, it is to receive a reasonable, rather than a strict, construction. It is against common right that a person or corporation should have the power, but having the power, it is for the general good that they should not be hampered or embarrassed by a narrow and technical interpretation of it." If this rule should be applied to the case at bar it would not aid appellee, for, as before said, there is nothing in the record to show that a strict interpretation of the proviso of the ordinance would hamper or embarrass appellee in building its road. Nor is there anything in the other provisions of the ordinance which, of itself, would require any different construction. In a proper case, if it were shown by evidence that the object of the ordinance would be defeated or greatly hindered, in its application to the actual location and construction of the road, by giving to the proviso in question a strict construction, then, in view of the presumption which must be indulged, that the city council intended by the ordinance that it should prove effectual in enabling appellee to construct its road, doubtless the literal meaning of the language employed would have to yield to a more liberal interpretation.

Under the ordinance, appellee had the right to locate its road on either the east or west side of the alley. Having chosen the west side, we think, as the case is presented, it must be confined to that side, and that the condemnation of so much of the west six feet of said lot 13

as lies east of the west line of said alley when extended north to Twenty-eighth street was erroneous.

The judgment of the circuit court condemning said west six feet and the improvements thereon is reversed, and the cause remanded to that court for further proceedings consistent with this opinion.

*Judgment reversed.*