THE PEABODY COAL COMPANY *et al.*

*v.*

THE NORTHWESTERN ELEVATED RAILROAD COMPANY.

*Opinion filed October 23, 1907—Petition stricken Dec. 4, 1907.*

1. EMINENT DOMAIN—*statutory power may be limited by ordinance.* An ordinance granting to an elevated railroad company the right to erect its structure within the limits of the city, which provides that at least twenty feet clear head-room shall be left between the lower chord of the girders of the structure and the surface of the rails of steam railroads crossed by said structure, is a limitation upon the company's statutory power of eminent domain, and by accepting the ordinance the company is bound by such limitation.

2. SAME—*provision of ordinance relating to elevated railroads construed.* A provision of an ordinance granting to an elevated railroad company the right to erect its structures within the city, which requires twenty feet clear head-room to be left between the lower chord of the girders and the surface of the rails of the tracks "of all existing steam railroads" crossed by the said structures, includes private switch tracks connected with steam railroads and used for switching purposes, and is not limited to tracks owned by steam railroads.

3. SAME—*ground occupied by a private switch track is right of way.* The ground necessarily used and occupied by a private switch track is "right of way," within the meaning of an ordinance requiring a certain amount of head-room to be left under an elevated railroad structure wherever it crosses the "right of way and tracks of existing steam railroads," even though no boundaries for the right of way have ever been fixed, where the title to the track, and to the tract of land over which it passes, is in the same person.

4. SAME—*objection to departure from an ordinance respecting railroads may be made by owner of switch track.* In condemnation by an elevated railroad company, the right to object to a departure by the petitioner from the plan of construction required by ordinance where the elevated structure crosses the right of way and tracks of existing steam railroads is not limited to railroad companies, but objection may be made by any one having a property interest in a private switch track used in connection with the road.

5. SAME—*when a motion to dismiss may be made after filing a cross-petition for damages.* The fact that the defendants to a condemnation petition by an elevated railroad company have filed a

cross-petition for damages does not preclude them from making ·a motion to dismiss after the petitioner, upon the order of the court, has filed specifications and plans for the structure proposed to be erected, from which it appears for the first time that the structure, as proposed to be built, is in violation of the ordinance granting the petitioner its privileges within the city.

6. Rehearings—*a petition for rehearing containing argument will be stricken from files.*   A petition for rehearing which contains a re-argument of the cause is in violation of rule 30, (204 Ill. 18,) which provides that "in no case will any argument be permitted in support of such petition," and will be stricken from the files.

7. Same—*grounds for rule against argument in petition for rehearing.*   The rule which prohibits argument in a petition for rehearing rests partly upon the ground that the adverse party has no opportunity to answer such argument unless a rehearing is granted, and partly upon the ground that all arguments must be made, in the first instance, by both sides, on all the points involved, nothing being reserved for rehearing in case of defeat.

8. Same—*party is concluded by the petition which he files.*   One who chooses to experiment with the rules of the court by filing a petition for rehearing containing argument subjects himself to the penalty of the rule that the petition "will be stricken from the files," and in case the petition is stricken for violation of the rule his right to a rehearing is lost, and he will not be permitted to file another petition, and thus, in effect, nullify the rule.

Carter, J., dissenting.

Appeal from the Circuit Court of Cook county; the Hon. Thomas G. Windes, Judge, presiding.

On February 21, 1906, the Northwestern Elevated Railroad Company, the appellee, filed its petition in the circuit court of Cook county against the Peabody Coal Company and the Meacham & Wright Company, the appellants, the John E. Burns Lumber Company and Sarah C. Turner, trustee of Mary E. Turner, to condemn a strip of land twenty-five feet in width for right of way through a tract of land containing about eight acres, owned by the said coal company, in the city of Chicago.   The petition was on March

22, 1906, amended by making the North Side Lumber and Timber Company a defendant.

A cross-petition was filed on April 12, 1906, by the Peabody Coal Company, alleging that it was the owner of the whole of said tract of land; that it was used as a coal distributing and storage yard and for other purposes requiring the use of railway terminal facilities; that said premises were especially adapted for said purposes and constituted a single, unbroken tract of land, and that all of said tract not included in the strip sought to be taken would be greatly and irreparably damaged and injured by the construction and operation of said road. On April 19, 1906, the North Side Lumber and Timber Company filed a cross-petition.

On June 1, 1906, the court entered an order directing the petitioner to file, on or before July 5, 1906, detailed plans of the structure of said elevated railroad that it proposed to erect over and across said tract of land, and thereafter, on June 8, 1906, upon the filing of said plans, each of the defendants except the John E. Burns Lumber Company filed in said court a motion to dismiss the petition on the ground that it appeared from the plans filed therein by petitioner that it proposed to construct its railroad over the right of way and tracks of the existing steam railroad located upon the property sought to be condemned, in such a manner as to leave clear head-room of less than twenty feet, contrary to the terms of the ordinance of the city of Chicago granting to petitioner the right to occupy the streets of the city, and in support of said motions filed the affidavit of one Frank J. Hibbs, which stated, among other things, that in March, 1902, the Chicago and Northwestern Railway Company constructed, with the consent of and by agreement with the Peabody Coal Company, tracks connecting the property of said coal company with the main line of said railroad, and that said tracks had been maintained and used by said railway company for the purpose of delivering coal and other merchandise for the benefit of said coal company

and its tenants and lessees; that said tracks, at and prior to the time of the passage of said ordinance, were, and at all times since have been, used as a part of the right of way and track of a steam railroad; that from the plans and drawings filed by petitioner herein it appears that the proposed structure for which it seeks to acquire the right of way will cross a portion of the aforesaid tracks at a height that will not leave, when constructed, to exceed fifteen feet clear head-room between the lower chord of the girders of the superstructure and the surface of the rails upon said railroad now in use upon defendant's property. Attached to the affidavit is a copy of the ordinance mentioned aforesaid, and in further support of the motions were offered the drawings referred to by Hibbs in his affidavit. In opposition to the motions petitioner filed the counter-affidavit of Clarence A. Knight, which stated that the tracks of the Peabody Coal Company sought to be crossed were not a part of the right of way of the Chicago and Northwestern Railway Company, and that from the west line of the right of way of said company to and through the said coal yards the tracks were not owned by said railway company. Upon a hearing the motions were denied, and at the same time the court found, and counsel for petitioner admitted, that the lowest portion of the longitudinal girders of the said proposed structure at the point where it crossed the said railroad track on the property of said coal company was less than twenty feet from the surface of the ground, and when constructed would leave not to exceed fifteen feet clear head-room between the lower chord of the girders of said superstructure and the surface of the rails upon said railroad tracks.

During the trial a number of stipulations were filed by the petitioner, by one of which it stipulated that its railroad should be built substantially as provided by the ordinance passed by the city council of the city of Chicago on January 16, 1905. In another it stipulated that it would re-arrange

the plan of its structure proposed to be erected on said premises in such a manner as to provide for an open space sixty-five feet in length, running lengthwise beneath said structure and seventeen feet nine and one-half inches from the surface of the ground to the lowest point of the longitudinal girders extending over said sixty-five foot space.

At the close of all the evidence each of the defendants except the John E. Burns Lumber Company again moved the court to dismiss the petition on substantially the same grounds as urged by them in their former motions. The motions were denied, and the said defendants then separately moved the court that petitioner be required, as a condition precedent to granting it the right to condemn the said property or any part thereof, to agree to comply with the terms and conditions of the said ordinance by building the structure for its said road so as to give twenty feet clear space over the right of way and tracks of the steam railway on said premises, and that the further hearing of the case and the entry of the verdict and final judgment be postponed until petitioner made such agreement, which motions were also denied.

From the record it appears that the tract of land owned by the Peabody Coal Company through which petitioner is seeking to obtain a right of way is in the shape of a right-angled triangle, with its apex to the south. It is bounded on the west by Lincoln avenue, on the north by Grace street and on the east by the right of way of the Chicago and Northwestern Railway Company, the west line of the tract being the hypothenuse and the east line being the longer leg of the triangle. The entire tract contained about 300,000 square feet, the strip sought to be condemned about 16,700 square feet, the portion of the tract east of the proposed railroad about 180,000 square feet and the portion west about 100,000 square feet. A large part of said tract was used by the said coal company as a retail coal yard, which supplied a district surrounding it within a radius of about

two miles. Parts of the remaining portion of the tract were leased to the Meacham & Wright Company and to the John E. Burns Lumber Company. The lease of the Burns Lumber Company, however, had been assigned to the North Side Lumber and Timber Company. Both leases were subject to termination, at the option of the coal company, at the end of any year. Sarah C. Turner was the trustee in a deed of trust made by the Peabody Coal Company to secure a loan. From the main line of the Chicago and Northwestern railway a track was built connecting with several tracks in the coal yard, one of which extended west almost to the line of Lincoln avenue and was crossed by the proposed line of said elevated road. Over this track, and others in the yard, coal and other freight were delivered by the Northwestern Railway Company from its road. About four blocks south of the coal yard the proposed line crosses the tracks and right of way of the Northwestern Railway Company.

A large number of witnesses testified. The jury viewed the premises and returned a verdict for $13,083 as compensation for the property taken and damages to the remainder. The North Side Lumber and Timber Company was awarded $827 and the other defendants $12,256 of this amount. After overruling the motions of defendants for a new trial and in arrest of judgment, and their objections to an entry of an order of the court authorizing petitioner to take possession of the property, or any part thereof, pending any appeal unless petitioner agreed to build its structure in such manner as to leave twenty feet of space above the track in question, the court entered judgments upon the verdict. A separate judgment was entered in favor of the North Side Lumber and Timber Company, and that company did not appeal. From the judgment as to the remaining defendants the Peabody Coal Company and the Meacham & Wright Company appeal to this court, and urge as grounds for reversal (1) the court erred in overruling the motions

of defendants to dismiss the petition; (2) the court erred in passing on instructions; (3) the court erred in passing on objections to evidence offered.

HORACE KENT TENNEY, and ARTHUR W. UNDERWOOD, for appellants.

CLARENCE A. KNIGHT, and WILLIAM G. ADAMS, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Appellee was granted permission by the city of Chicago to occupy the streets with its structure by an ordinance which contained, among other provisions, the following: "No part of the girders on the superstructure shall be less than fourteen feet above the present established grades of streets and alleys, and wherever the said elevated structure crosses or passes over the right of way and tracks of all existing steam railroads the clear head-room between the lower chord of all of said girders and the surface of the rails on all of said railroads or their present or hereafter established grades and from out-to-out of their right of way shall not be less than twenty feet." Shortly after the passage of the ordinance, and before the beginning of this proceeding, appellee filed in the office of the city clerk its acceptance of all the terms, provisions and conditions of the ordinance. The ordinance forbade to appellee, in passing over the right of way and tracks of existing steam railroads, the use of any space less than twenty feet above the upper surface of the rail of the steam railroad. No such prohibition is found in the Eminent Domain act. The ordinance, when accepted, became a limitation upon the right of appellee to exercise the power of eminent domain conferred by the statute. (*Tudor* v. *Rapid Transit Railroad Co.* 154 Ill. 129; *Same* v. *Same,* 164 id. 73.) Appellee could not, by the exercise of that power, after accepting that ordinance,

acquire the right to use any space for its superstructure over the tracks and right of way of a steam railroad which was less than twenty feet above the surface of the rail.

The steam railroad track on the premises of the appellant coal company, and which appellee's structure will cross, is a private switch track owned by the coal company and located upon its ground. The switch track connects with the main line of the Chicago and Northwestern Railway Company, but that company has no right to use the track, or the ground over which it passes, except by virtue of an existing license from the coal company, which, so far as appears from the evidence, may be revoked by the licensor at any time, and it is urged by appellee that for this reason the track in question does not come within the language above quoted from the ordinance, because, as it is said, the word "of," where it precedes the words "all existing steam railroads," means "in the relation of ownership or possession," and that the right of way and tracks referred to therefore are only those owned by "existing steam railroads," and that as the switch track and the ground upon which it rests are not owned by a "railroad" they are not covered by the ordinance. The term used in the ordinance is not "of railroad companies" or merely "of railroads," but is of "all existing steam railroads," and was evidently intended only to identify the right of way and tracks mentioned in the ordinance, by indicating the character of the road of which they formed a part. We think the word "of," as there used, was not intended to denote ownership. The principal purpose of the ordinance in providing for this space was, no doubt, to insure the safety of those traveling upon and operating trains on the steam railroads, and the end to be attained by the ordinance is just as important in the case of a private switch track over which trains pass, as in the case of a switch track which, with the underlying right of way, is owned by the railroad company engaged in running trains thereon. It is clear that the ordinance includes all tracks

and rights of way over which the ordinary cars or trains used in operating a steam railroad are propelled for the purpose of transporting freight or passengers.

The title to the tracks in the coal yard and to the ground over which they pass are in the same owner, and the boundaries of the strip used for railroad purposes, or which might rightfully be used by the company or person running trains over this switch, have not been fixed. It is urged that the quoted provision of the ordinance is not applicable because there is here no "right of way" in the ordinary meaning of that term as used in condemnation proceedings. We think the term in the ordinance does not have such a restricted significance. It means the way occupied and used for the track and the operation of trains. Its width in the present case must be determined by necessity, and is no greater than the space needed for the safe and convenient operation of trains over this track.

It is then urged that no one but the Northwestern Railway Company should be permitted to raise this question. That company has a mere license to use the tracks, which is of little or no value, while to the coal company the right to use the tracks for moving freight thereon in railroad cars is of great value. We think this objection may be made by any party having a property interest in the track or right of way which the elevated railroad is to cross.

In pursuance of an order of the circuit court appellee filed detailed plans and drawings showing the height, width and method of construction of the elevated railroad structure which it proposed to erect upon the coal company's property, and from which it appeared that twenty feet of space would not intervene between the surface of the switch tracks and the lower portion of appellee's superstructure. Appellants thereupon entered a motion to dismiss the petition, for the reason that the plans did not provide the necessary space above the rails of the switch track. Appellee insists, upon the authority of *Ward* v. *Minnesota and*

*Northwestern Railroad Co.* 119 Ill. 287, that the coal company having theretofore filed a cross-petition thereby waived its right to move to dismiss the petition, and that for this reason the motion was properly denied.   In that case appellants sought a reversal for the reason that there was no proof that the petitioner was a corporation, and it was held that this question could not be raised after the filing of the cross-petition.   It was there said that by filing the cross-petition "it admits petitioner has the right to exercise the right of eminent domain."   This statement was made with reference to the contention that the petitioner was not a corporation.   That was a preliminary question, which should have been presented to the court prior to the filing of the cross-petition.   The cross-petition in this case was filed before the detailed statement of the plans was filed.   The cross-petitioner was not at that time advised, by anything appearing of record, that appellee proposed to proceed in any manner other than that contemplated by the ordinance.   The motion was promptly made upon the filing of the documents which showed the purpose of appellee, and was therefore in apt time.   The Meacham & Wright Company filed no cross-petition, and for this reason appellee's objection does not apply to that company's motion to dismiss.

It is unnecessary to consider other errors assigned.

The judgment from which this appeal was prosecuted will be reversed and the cause will be remanded.   The judgment relating to the property of the North Side Lumber and Timber Company will not be disturbed.

*Reversed and remanded.*

Mr. JUSTICE CARTER dissenting.

Subsequently, on consideration of the petition for rehearing in the above cause, the following additional opinion was announced orally by Mr. JUSTICE VICKERS:

The petition for rehearing in this case will be stricken from the files because it is in violation of the rules of this

court, in that the petitioner has elaborately re-argued the questions involved which have been argued in the original briefs and are disposed of in the opinion of the court.

It is to be regretted that attorneys, in the preparation of petitions for rehearing, disregard the rule of this court which forbids any argument in a petition for rehearing. The rule is clear and explicit and no one need fail to understand it. It is published on page 18 of volume 204 of the Supreme Court Reports, and is as follows:

"Application for a rehearing in any case shall be made by petition to the court, signed by counsel, stating concisely the points supposed to have been overlooked or misapprehended by the court, with proper reference to the particular portion of the original abstract and brief relied upon. In no case will any argument be permitted in support of such petition. This rule will be strictly enforced, and any petition in violation thereof will be stricken from the files."

This rule is a salutary one and tends to promote the fair and orderly dispatch of the business of the court. One reason upon which the rule rests is, that the party against whom the petition is filed has no opportunity to reply to any argument that may be contained in the petition unless a rehearing is granted. To permit one party to make an argument to which the other has no opportunity to reply would be manifestly unfair to the successful party. Each party is afforded ample opportunity to argue the case before it reaches the rehearing docket. The rule is intended to compel parties to develop all the points and arguments before the case is submitted, and prevent them from holding in reserve some new point or argument to be brought forward for the first time in the petition for rehearing, in case they are beaten. The rule provides that the penalty for its violation is that the petition shall be "stricken from the files." In this case the party whose petition is stricken has tendered another petition for rehearing and asked leave to file it. This motion will be denied. This application is

presumably made in anticipation that the first petition would be stricken. If the petitioner had complied with the rules in his first petition no occasion would have arisen for filing another. To permit a party who has filed a petition in violation of the rules to file another would, in effect, nullify the rule itself. If a party may file a second petition for rehearing after a former one is stricken from the files because in violation of the rules, the only penalty suffered is the loss of the labor and expense in the preparation of the second petition. The spirit of the rule is, that when a party violates it his petition shall be stricken from the files and his right to a rehearing is thereby lost. We cannot entertain a motion to file a second petition for rehearing where the first has been stricken because in violation of the rules of this court.

The petition for rehearing will be stricken from the files and leave to file the second will be denied. The remanding order in this case will be modified.

*Petition stricken.*