John B. **PFAFF** and Green Mountain Management, Inc., a Colorado corporation, Plaintiffs-Appellants and Cross-Appellees,

v.

The CITY OF LAKEWOOD, a Colorado municipal corporation; The City Council of the City of Lakewood; and Jean Rogers, Lakewood City Clerk, Defendants-Appellees,

and

Randy Royer, individually and as agent of Relax Development Corporation, Ltd., a Colorado corporation; Relax Development Corporation, Ltd., a Colorado corporation, and all successors and assigns; and Relax-Denver Investment Group, Ltd., a Colorado limited partnership, and all successors and assigns, Defendants-Appellees and Cross-Appellants.

No. 84CA0600.

Colorado Court of Appeals, Div. I.

May 30, 1985.

Rehearing Denied July 18, 1985.

Certiorari Denied Jan. 13, 1986.

Bradley, Campbell & Carney, P.C., Michael C. Villano, Victor F. Boog, Golden, for plaintiffs-appellants and cross-appellees.

Gorsuch, Kirgis, Campbell, Walker & Grover, Leslie A. Fields, Merry Ann Vernon, Denver, for defendants-appellees.

Shaw, Spangler & Roth, Robert C. Roth, Jr., Christopher C. O'Dell, Denver, for defendants-appellees and cross-appellants.

STERNBERG, Judge.

The defendants, Randy Royer, Relax Development Corporation, Ltd., and Relax Denver Investment Group, Ltd., (Relax) own a 5.3 acre tract of ground in Lakewood that is zoned for office use. The plaintiffs, John B. Pfaff and Green Mountain Management, Inc., own property on which a hotel is situated. The plaintiffs' land is located immediately across the street from Relax's ground. Relax applied to the City of Lakewood to rezone its land to permit a hotel-motel development. The actual request before the city council was for it to rezone 3.12 acres of the plaintiffs' 5.3 acre parcel; thus, a 2.18 acre buffer zone, ranging from 30 to 100 feet in width, was created around a portion of Relax's property.

Seeking to invoke the "legal protest" section of the Lakewood City Charter, the plaintiffs presented petitions opposing the rezoning which they alleged were signed by the owners of 20 percent or more of property adjacent to the subject parcel. However, the city council measured from the interior 3.12 acre parcel and concluded that the petitions were not signed by 20 percent of adjacent land-owners. The council then passed the rezoning ordinance by a majority, but less than a two-thirds affirmative, vote.

The plaintiffs brought a C.R.C.P. 106(a)(4) action against Relax, the city, and city officials, seeking a declaration that the rezoning ordinance had in fact been defeated because it had been passed by less than a two-thirds affirmative vote. The trial court held against them, and they appeal. Relax cross-appeals. We affirm.

■ The charter provision in question provides:

"In case of a protest against changes in regulations or restrictions, or changes in the zoning district applicable to a particular land ... which is signed by the owners of twenty percent or more of the area subject to the proposed change or twenty percent or more of the area bounded by a line drawn at a distance of one hundred feet from every point of *the outer boundary of the area subject to the change*, disregarding intervening public streets and alleys ... such changes shall not become effective except by a favorable vote of two-thirds of all members of the city council." (emphasis added)

In light of this provision, the determinative issue is whether, as the plaintiffs contend, the legal protest area should be measured from the perimeter of the full 5.3 acre tract, or, as the city council did, from the boundary of the interior 3.12 acre parcel. This issue presents a question of the meaning of the language of the charter. It is the plaintiffs' view that we should liberally construe the language of the charter to accomplish the purposes for which it was adopted, rather than to construe narrowly by applying the exact words used in the charter provision.

When self-created buffer zones have been at issue, most jurisdictions have applied legal protest legislation as written. *See, e.g., Heaton v. City of Charlotte,* 227 N.C. 506, 178 S.E.2d 352 (1971) (where no property of protestors was within the 100 foot requirement of the statute, the buffer zone so created was within full compliance with the law); *St. Bede's Episcopal Church v. City of Santa Fe,* 85 N.M. 109, 509 P.2d 876 (1973) (where owner of one lot purposely designated only a part of that lot to be rezoned, an owner adjacent to the whole lot, but more than 100 feet from the area to be rezoned, was legally precluded from forcing the three-fourths vote); *Rodgers v. Village of Menomonee Falls,* 55 Wis.2d 563, 201 N.W.2d 29 (1972) (100–foot area of permissible protest is measured from the boundary of the property to be rezoned, not the boundary of the owner's entire property lot); *see also* 2 A. Rath-kopf, *Law of Zoning & Planning* § 29.04 (4th ed. 1985).

The plaintiffs cite *Herrington v. County of Peoria,* 11 Ill.App.3d 7, 295 N.E.2d 729 (1973) in support of their position. In *Herrington,* the rezoning statute provided that an amendment required the vote of three-fourths of the members of the county board, if written protest were filed by 20 percent of the owners of adjacent frontage property. The court held that three strips of land 30 feet in width did not destroy contiguity and the attendant right of nearby property owners to protest the zoning changes on the tract of land being rezoned. The court reasoned that the property being rezoned and the three 30-foot-wide strips were so mutually dependent that neither property would be suitable for use without the other; therefore, it concluded the purpose of the statute would not be served by allowing the buffer strip to destroy contiguity.

*Herrington* is distinguishable from this case, and the cases cited above because there, the court concluded the buffer zone could not be used independently of the balance of the property. Here, there is no such intimate connection between the properties; the parcel not being rezoned can be used in a manner consistent with the permitted uses in the zoning ordinance. Thus, there is nothing illusory about the creation of the buffer which would lead to a holding that, because the buffer zone was to avoid a legal protest, it was therefore illegal or illegitimate.

Moreover, the Herrington court distinguished its holding from that of the North Carolina court in *Heaton v. City of Charlotte, supra,* because of the differences between the Illinois statute and the North Carolina statute. The Lakewood Charter provision under analysis here is closer to the North Carolina statute because it limits the use of the legal protest device to "the area bounded by a line drawn at a distance of 100 feet from every point of the outer boundary of the area subject to the change...."

■ We also agree with the trial court's finding that the city council properly deter-

mined that the plaintiffs did not meet the 20 percent requirement for the legal protest.

The court found that the city council chose an appropriate method to calculate the percentage of ownership included in the 100 feet for protest by measuring from the boundary of the interior 3.12 acre parcel. The council followed the method of disregarding intervening streets and alleys recommended by the city staff, which was to draw lines perpendicular to the property line, and to extend that line beyond the right of ways. The ordinance requires that intervening public streets and alleys not be used in the computation. The council's method of computation was neither arbitrary nor capricious, and was not in error. *Board of County Commissioners v. Simmons*, 177 Colo. 347, 494 P.2d 85 (1972).

The plaintiffs' other contentions of error are without merit. By our disposition of the appeal, the issues raised in the cross-appeal are moot.

The judgment is affirmed.

PIERCE and BERMAN, JJ., concur.