950 P.2d 167

**Gerard SCHWARZ, also known as Jerry Schwarz, and Diane Schwarz, husband and wife, Plaintiffs–Appellants,**

v.

**CITY OF GLENDALE, a municipal corporation; and Samaritan Health Systems, an Arizona nonprofit corporation, Defendants–Appellees.**

**No. 1 CA–CV 97–0073.**

Court of Appeals of Arizona,
Division 1, Department D.

Dec. 16, 1997.

Dushoff & McCall, P.C. by Jay Dushoff, Denise J. Henslee, Phoenix, for Plaintiffs-·Appellants.

Peter Van Haren, Office of the City Attorney by David A. Pennartz, Deputy City Attorney, Glendale, for Defendant–Appellee, City of Glendale.

Beus, Gilbert & Morrill, P.L.L.C. by Martin A. Aronson, Christine R. Taradash, Phoenix, for Defendant–Appellee Samaritan Health Systems.

## OPINION

RYAN, Judge.

Under Arizona statute, when twenty percent or more of the property owners within 150 feet of property included in a proposed zoning change protest the proposed rezoning in writing, the proposed change cannot become effective unless approved by a super-majority, three-fourths, vote of the city council. Ariz.Rev.Stat. Ann. ("A.R.S.") § 9–462.04(G). We must decide whether a buffer area created by the property owner seeking rezoning prevents the statute from being triggered. The trial court found that it does on the facts of this case. We agree and thus affirm.

## FACTS AND PROCEDURAL HISTORY

In May 1992 Samaritan purchased a vacant 15.1 acre parcel of land in Glendale, Arizona, bounded on the north by Eugie Avenue and on the east by 56th Avenue. Across Eugie Avenue to the north of the property was Thunderbird Samaritan Medical Center. Across 56th Avenue to the east of the property was a residential neighborhood. Samaritan purchased the parcel hoping to build a 98,000 square foot medical office building on a portion of it.

Previously the City of Glendale ("City") had adopted a general plan setting forth its statement of land development policies as required under state law. See A.R.S. §§ 9–461 to 9–461.12. At the time Samaritan purchased the property, it was zoned R–3 and R–4 for multi-family residential use under the City's general plan.

Samaritan sought changes to the general plan and existing zoning so that it could build the office building on the western 11.76 acres of the property ("Office Property"). The remaining 3.34 acres, which Samaritan did not plan to use in the office building project, were configured to create a 160-foot wide area on the eastern end of the parcel ("Buffer Zone"). This area would serve as a buffer between the Office Property and the residential properties east of 56th Avenue and could be used by residents.

On November 6, 1992, Samaritan filed three applications with the City's Planning and Zoning Commission ("Commission"): (1) No. GP–92–08 ("First Application") to amend the general plan by re-designating the entire parcel from multi-family residential to general office; (2) No. Z–92–23 ("Second Application") to rezone the 11.76 acres making up the Office Property to C–O (commercial office); and (3) No. Z–92–24 ("Third Application") to rezone the 3.34 acres making up the Buffer Zone to A–1 (agricultural residence) because Samaritan intended to create an

open, landscaped area throughout the Buffer Zone. Before any public hearings, Samaritan withdrew the Third Application and proceeded only with the first two applications.

In March 1993 the Commission held public hearings on the First and Second Applications. Thereafter, the Commission recommended that the Glendale City Council approve both applications. The recommended approval of the Second Application was subject to thirteen stipulations. The stipulations required certain landscaping improvements in the Buffer Zone and the grant of a public easement through the Buffer Zone allowing access by residents of the area. Samaritan voluntarily entered into these stipulations; the Commission had not imposed them as conditions to rezoning.

On June 28, 1993, a neighborhood coalition filed a petition requesting that the Council's vote on the Second Application be subject to the super-majority, three-fourths vote requirement of A.R.S. section 9–462.04(G).[1] Twenty-six individuals, constituting over eighty percent of the property owners located within 150 feet of the Buffer Zone, but not within 150 feet of the Office Property, signed the petition. None of the complaining property owners resided within 150 feet of the Office Property.

On June 29, 1993, the Council held a public hearing on the first two applications. Only six of the seven members of the Council attended and voted. The Council approved both applications by a majority vote of four to two, refusing the request of the protest group to apply the three-fourths vote requirement of A.R.S. section 9–462.04(G) to the Second Application.[2]

Appellants, who were among the twenty-six neighbors requesting the super-majority vote, then filed the complaint in this case.

They sought judicial review of the Council's approval of the Second Application, asking to have the rezoning voided because it had not been approved by a three-fourths vote of the Council. The trial court found that the three-fourths requirement of A.R.S. section 9–462.04(G) was not triggered in this case. Appellants timely appealed, and we have jurisdiction under A.R.S. sections 12–913 and 12–2101(B).[3]

### DISCUSSION

The facts are undisputed. The sole issue is whether the super-majority vote requirement of A.R.S. section 9–462.04(G) was called into play for the rezoning of the Office Property. Because the interpretation and application of statutes involve the resolution of legal issues, we review such decisions de novo. *Libra Group, Inc. v. State*, 167 Ariz. 176, 179, 805 P.2d 409, 412 (App.1991).

Municipalities must strictly follow the statutory procedure to enact a zoning ordinance. A court must void a zoning ordinance enacted by procedures that do not substantially comply with the statutory requirements. *Levitz v. State*, 126 Ariz. 203, 205, 613 P.2d 1259, 1261 (1980); *Manning v. Reilly*, 2 Ariz.App. 310, 313, 408 P.2d 414, 417 (1965). Our supreme court held a zoning change void where, under the precursor to A.R.S. section 9–462.04(G), a super-majority vote of the zoning board members had been required, but the requirement had not been met. *Hyland v. City of Mesa*, 112 Ariz. 66, 67–68, 537 P.2d 936, 937–38 (1975). Samaritan and the City concede that if a super-majority vote was required to approve the rezoning of the Office Property, the rezoning was void because a super-majority vote was not obtained.

---

1. Section 9–462.04(G) provides in pertinent part: "If the owners of twenty per cent or more either of the area of the lots included in a proposed [zoning] change, or those immediately adjacent in the rear or any side thereof extending one hundred fifty feet therefrom, or of those directly opposite thereto extending one hundred fifty feet from the street frontage of the opposite lots, file a protest in writing against a proposed [zoning] amendment, it shall not become effective except by the favorable vote of three-fourths of all members of the governing body of the municipality."

2. The Council approved the rezoning of the Office Property subject to the thirteen stipulations agreed to by the Commission and Samaritan. The approved stipulations contained minor changes not important to this case.

3. The construction of the office building and the landscaping of the buffer area have been completed, and the building is occupied and in operation as a medical building.

Under section 9–462.04(G), when twenty percent or more of the property owners within 150 feet of property included in a proposed zoning change protest the proposed rezoning in writing, the proposed change cannot become effective unless approved by three-fourths of the members of the body authorized to rule upon it. Here, appellants must overcome the fact that their property is not within 150 feet of the Office Property. Although appellants' property is within 150 feet of the entire parcel purchased by Samaritan, it is not within 150 feet of the Office Property for which Samaritan sought rezoning. Samaritan created the 160–foot wide Buffer Zone area to separate the Office Property from appellants' residences.[4]

The majority of state courts that have considered similar factual situations have concluded that self-created buffer zones prevent the application of super-majority voting statutes. *See, e.g., Pfaff v. City of Lakewood,* 712 P.2d 1041, 1043 (Colo.App.1985); *Midway Protective League v. City of Dallas,* 552 S.W.2d 170, 174 (Tex.Ct.App.1977); *St. Bede's Episcopal Church v. City of Santa Fe,* 85 N.M. 109, 509 P.2d 876, 877 (1973); *Rodgers v. Village of Menomonee Falls,* 55 Wis.2d 563, 201 N.W.2d 29, 33 (1972); *Heaton v. City of Charlotte,* 277 N.C. 506, 178 S.E.2d 352, 364–66 (1971). These courts have consistently held that an applicant for a zoning change may avoid the necessity for a super-majority vote by creating a buffer zone between the property to be rezoned and the lands of adjacent property owners. We adopt the majority position.[5]

■ Appellants acknowledge that creation of a buffer zone to defeat statutory requirements such as those found in A.R.S. section 9–462.04(G), even when done solely for that purpose, is not considered an illegal subterfuge. They point out, however, that some of the above-mentioned courts recognize that certain circumstances might cause the creation of a buffer zone to be an illegal subterfuge.

For example, *Herrington* held that if the rezoned property and the buffer zone property are so mutually dependent that neither property would be suitable for use without the other, the super-majority statute is triggered. 295 N.E.2d at 732–33. Appellants also point to language in *Pfaff* indicating that the creation of a buffer zone is illusory if the buffer zone cannot be used in a manner consistent with the uses permitted under the governing zoning ordinance. 712 P.2d at 1043. They argue that for one or both of these reasons, the Buffer Zone created in this case is illusory and should not be allowed to prevent the application of the super-majority voting requirement. We disagree.

We agree that the creation of the Buffer Zone could not prevent the application of the super-majority requirement if the rezoned Office Property could not be put to its intended use without also making use of the Buffer Zone. Such is not the situation here. The use of the Office Property is not dependent on any use of the Buffer Zone. In *Herrington,* the rezoned property could not be used without the construction of access roads through the buffer zones. Here, the Office Property can be used without any changes to the Buffer Zone. The landscaping and public easement through the Buffer Zone were created solely for the benefit of the neighboring residents.

Appellants also argue the Buffer Zone is illusory because it can no longer be used in a manner consistent with the permitted uses of

---

4. A.R.S. section 9–462.04(G) gives special protection to property owners closest to the property proposed to be rezoned by requiring a super-majority vote if enough property owners adjacent to the property object. The legislature drew the line 150 feet from the subject property. It must have believed that property owners beyond that line would be adequately protected by the normal process in which a simple majority vote is required.

5. One case reaching an opposite conclusion is *Herrington v. County of Peoria,* 11 Ill.App.3d 7,

295 N.E.2d 729 (1973). *Herrington* is readily distinguishable from the present case and those cited above as it involved a statute that did not specify a distance within which property owners had to live in order to invoke the super-majority vote requirement. We note that the Colorado appellate court in *Pfaff* distinguished *Herrington* on that ground. 712 P.2d at 1043. Moreover, the *Herrington* court distinguished its holding from those cases considering statutes which required that the property owner live within a specified distance. 295 N.E.2d at 733.

its R-4, residential zoning classification. This argument fails. Property landscaped with grass, trees, and benches falls within the classification of "parks and playgrounds," a permitted R-4 use under the City's zoning ordinance. Additionally, the City's zoning ordinance permits landscaping with grass and trees on otherwise vacant lots in any zoning district.

Alternatively, appellants argue that the amendment of the general plan changing the designations of both the Office Property and the Buffer Zone effectively rezoned the Buffer Zone. This argument fails for two reasons. First, Arizona does not recognize "de facto" rezoning. Arizona law requires strict compliance with the statutory procedures to rezone property. *Levitz*, 126 Ariz. at 205, 613 P.2d at 1261; *Manning*, 2 Ariz. App. at 313, 408 P.2d at 417. These decisions demonstrate that any attempt at zoning falling short of rigorous adherence to the statutes is invalid. Because the amendment of the general plan could not work a de facto change in the zoning of the Buffer Zone, A.R.S. section 9-462.04(G) does not apply.

Second, the language of this subsection and its location within the statutes dealing with municipal zoning make clear that the subsection only applies when *zoning* changes are being proposed. The section does not apply when changes to a city's general plan are being proposed. We have been cited to no statute requiring a super-majority vote to amend the general plan.

Finally, appellants argue that section 9-462.04(G)'s super-majority requirement applies in this case because the Council only approved the rezoning of the Office Property after Samaritan agreed to certain conditions regarding the Buffer Zone. Section 9-462.03 provides:

> A *zoning ordinance* which changes any property from one zone to another, *imposes any regulation not previously imposed* or which removes or modifies any such regulation previously imposed shall be adopted in the manner set forth in § 9-462.04.

(Emphasis added.) Appellants assert that the stipulations regarding the Buffer Zone were "regulation[s] not previously imposed," thereby invoking A.R.S. section 9-462.04(G).

For the same reasons given by the trial court, we reject appellants' argument concerning A.R.S. section 9-462.03. That section addresses only zoning decisions made with respect to property that is actually rezoned. No zoning change took place on the Buffer Zone property; only the Office Property's zoning was changed. Thus, section 9-462.03 does not apply because the stipulations do not affect the R-4 zoning of the Buffer Zone. Accordingly, a simple majority vote was appropriate to change the zoning of the Office Property.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment upholding the Council's majority vote approving the rezoning of the Office Property. Samaritan's creation of the 160-foot Buffer Zone between the Office Property and appellants' residential property avoided application of A.R.S. section 9-462.04(G)'s super-majority requirement.

EHRLICH and KLEINSCHMIDT, JJ., concur.